## Felix Chazournes *versus* Thomas Edwards and William Frost.

Where a note is given in the name of a firm, by one of the partners, for the private debt of such partner, and known to be so by the person taking the note, the other partners are not bound, unless they have been consulted and have consented to the transaction.

The person taking such note cannot recover on it against one who indorses it without any consideration, thinking it to have been made by the firm; and the burden of proof is on the holder, to show that the indorser knew the circumstances under which it had been made.

Assumpsit against the defendants as indorsers of a promissory note, dated the 17th of May, 1823, purporting to be made by Edwards & Coffin, payable to the defendants in two months from date with grace, for the sum of 955 dollars, 23 cents.

The note was made by Albert Coffin, who at the time of making it was a partner in trade with Abraham Edwards, and was indorsed by Thomas Edwards on account of himself and partner, William Frost, in the name of their firm.

The defence was, that the note was made by Coffin without the knowledge or consent, and in fraud of his partner, Edwards, as payment or security for a debt due to the plaintiff from Coffin and one Bowes, his former partner, and for no other consideration.

William Whitney, the agent of the plaintiff who was a merchant in New York, testified that Bowes & Coffin purchased goods of the plaintiff in that city, for which they gave him their note payable in four months. The note was discounted for the plaintiff at the United States Branch bank, and was at the branch in Boston for collection. Before it became due, Bowes & Coffin, or one of them, applied to the plaintiff for further credit, stating that their partnership was dissolved, which rendered it inconvenient for them to pay it. The plaintiff wrote to the witness, stating his willingness to give them further credit if the witness thought they were safe persons to be credited. Afterwards, a short time before the note became due, Coffin applied to the witness, as agent of

the plaintiff, for an extension of credit; which he agreed to give upon having a satisfactory note. Coffin proposed Edwards & Coffin's note at sixty days, indorsed by the defendants; with which the witness said he should be satisfied. Near the close of banking hours, on the day when the note became due, the witness found that Coffin did not come and he sent for him. Coffin accordingly came to his store and began to write a note, but soon stopped and observed that he might as well go to his own store and write it, as he should have to go up the street to get it indorsed by Edwards & Frost. He then went out and shortly returned with the note now in suit, with the names upon it which now appear. The witness then sent his clerk to the bank with a check to take up the old note of Bowes & Coffin, which being brought was given up to Coffin in exchange for the note now in suit. There was no other consideration for this note than what appears from the foregoing statement. The body of the note and the signature of the makers were in the hand-writing of Coffin.

<em>Chazournes v. Edwards.</em>

Abraham Edwards, the partner of Coffin, being called as a witness by the defendants, was objected to by the plaintiff as interested, but being released he was admitted. He testified that on the 1st of May, 1823, after the dissolution of the copartnership between Bowes & Coffin, he formed a connexion with Coffin, which continued about three weeks. On the 24th of May the witness was surprised with information, that Coffin had absconded, having taken with him all the money which had been received in the course of their business, and having pledged the copartnership name for his private debts. The witness never consented that the name of Edwards & Coffin should be given for any debt of Bowes & Coffin or of Coffin, and never was asked by Coffin to give such consent, and had no suspicion that such a thing had been done, until Coffin had absconded. He denied any knowledge of the note now in suit, until several days after that event. He stated that no entry of it was ever made on the note book at the store, but that several days after Coffin had gone away a note book of Bowes & Coffin was shown to him by Coffin's brother, in which he saw an entry of the note, which book Coffin kept

Chazournes
v.
Edwards.

under his own control, and which the witness never saw before. The witness was the brother of Thomas Edwards, and it was understood that the firms of Edwards & Coffin and of Edwards & Frost should indorse for each other. The witness had paid all the debts contracted in the course of the partnership business of Edwards & Coffin, but had refused to pay in all cases where Coffin had undertaken to pledge the co-partnership name for his private debts.

There was no evidence given on either side (except what may result from the foregoing facts) in relation to the defendants' knowledge of the circumstances under which the note in suit was made.

A verdict was taken for the defendants by consent; and if the Court should be of opinion, that upon the above evidence the plaintiff was entitled to recover, the verdict was to be set aside and a verdict entered for the plaintiff; otherwise judgment was to be entered on the verdict.

March 4th.

*Morey* for the defendants. The plaintiffs not being innocent indorsees of this note, could not recover against Edwards & Coffin, the note having been given for a private antecedent debt of Coffin, as the plaintiff well knew, and without the assent or knowledge of Edwards. Bayley on Bills, (4th ed.) 47; *Shirreff* v. *Wilks*, 1 East, 49; *Arden* v. *Sharpe*, 2 Esp. R. 524; *Wells* v. *Masterman*, ibid. 731, *Ex parte Bonbonus*, 8 Ves. 540; *Green* v. *Deakin*, 2 Stark. R. 347; *Ridley* v. *Taylor*, 13 East, 175; *Livingston* v. *Hastie*, 2 Caines's R. 246; *Lansing* v. *Gaine*, 2 Johns. R 300; *Livingston* v. *Roosevelt*, 4 Johns. R. 251; *Dubois* v. *Roosevelt*, ibid. 262, note; *Dobb* v. *Halsey*, 16 Johns. R. 34, *Foote* v. *Sabin*, 19 Johns. R. 154; *Baird* v. *M'Donnell*, 4 Serg. & Rawle, 397; *Poindexter* v. *Waddy*, 6 Munf. 418. Neither can the plaintiff recover against the defendants. The note was not made and negotiated in the ordinary course of business, but was made for the occasion. The defendants were accommodation indorsers, they were mere sureties; and the Court will look at the circumstances of the case, without regarding the order in which the parties stand on the note. *Bickerdike* v. *Bollman*, 1 T. R. 405; *Corney* v. *Da Costa*, 1 Esp. R. 302; *Cory* v. *Scott*, 3 Barn. & Ald. 619; *Adams*

ᴠ. *Gregg*, 2 Stark. R. 531. And the defendants are sureties, not for Coffin, but for Edwards & Coffin. The law presumes that they intended to indorse for Edwards & Coffin, and the case finds that there was a standing agreement between the firms of Edwards & Coffin and Edwards & Frost to indorse for each other. Fell on Guarr. 122 to 127 ; *Cremer v. Higginson*, 1 Mason, 323. The plaintiff has disabled himself from suing the principal debtors, by taking the note for an illegal purpose, and he cannot call upon the sureties, who supposed they were indorsing a note which was valid against the makers. *Tindal v. Brown*, 1 T. R. 169 , *English v Darley*, 2 Bos. & Pul. 61 ; *Clark v. Devlin*, 3 Bos. & Pul. 365 ; *Gould v. Robson*, 8 East, 576 ; Fell on Guarr. 160 to 180 ; 13 East, 175 ; 2 Caines's R. 246.

*S. D. Ward*, for the plaintiff, admitted the general principle, that one of two partners cannot give a note in the name of the firm for his private debt, but he contended that if the other partner assents, or if the person taking the note has reason to think he assents, the partnership will be bound. This distinction is supported by the case cited from 13 East, 175, and it is applicable to the case before the Court. If the plaintiff was deceived by Coffin, Edwards must suffer, he having put it into the power of Coffin to deceive. But though the plaintiff may have no remedy against Edwards & Coffin, it does not follow that he cannot recover against the indorsers. If they knew the circumstances under which this note was made, at the time when they indorsed it, they are liable, and the burden of proof is on them to show that they were deceived. They were, as to the plaintiff, new makers of the note. There is no evidence that this was an accommodation indorsement. If it was, it is incumbent on the defendants to prove the fact. If it was not, they cannot be considered as sureties, and the plaintiff is entitled to recover.

*W. Prescott* replied.

PARKER C. J. delivered the opinion of the Court. The principle has been very distinctly settled in many cases in the English and New York reports, that a note or other security given in the name of a mercantile firm by one of the house, to pay or secure a private debt of his own, without the knowledge

Chazournes
*v.*
Edwards.

*March 7th.*

Chazournes
*v.*
Edwards.

or consent of his partners, cannot be recovered against the house.[1] It is so laid down in Bayley on Bills, (4th ed.) 47, and the cases cited in support of the position are numerous and decisive.

It is deemed fraudulent in the creditor of one of the partners to attempt to get security for his debt in a contract which the debtor undertakes to make for his partners, inducing him to avail himself of the power he has over the property of the house for his own private purposes.[2] And the knowledge o the creditor so conducting is shown by the very fact, that the debt he is attempting to secure is the debt of the individual and not of the company.

The only case which has a contrary tendency is that of *Ridley et al.* v. *Taylor*, 13 East, 175 ; in which case, however, the principle above stated is admitted, but it was thought that the facts did not show that knowledge on the part of the cred tor which would constitute the transaction fraudulent on his part. There were circumstances in the case from which it was thought the plaintiffs might reasonably infer, that the bill given to them by their debtor was one which he had a right within his general authority as a partner to transfer. Though the decision does not seem to be in exact conformity with the rule as before settled in several cases, yet the principle is clearly admitted. And certainly nothing is more just than the principle which restrains a partner, in the exercise of his power over the copartnership property or credit, to cases which relate to the copartnership concerns. It is sufficiently hard upon the partners, that they are to be bound in other cases

---

[1] *Munroe* v. *Cooper*, 5 Pick. 412; *Adams* v. *Paige*, 7 Pick. 542 ; *Flagg* v *Upham*, 10 Pick. 147; *Whitaker* v. *Brown*, 11 Wendell, 75; *Laverty* v. *Burr* 1 Wendell, 529.

So, if from the subject matter of the contract, or the course of dealing of the partnership, the creditor was chargeable with constructive knowledge of the fact, that the debt for which he takes the partnership security was a private debt of a particular partner, the partnership is not liable. *Green* v. *Deakin*, 2 Stark. R. 347 ; *New York Firemen Ins. Co.* v. *Bennett*, 5 Connect. R. 574. See also *Mercien* v. *Mack*, 10 Wendell, 461 ; *Evernghim* v. *Ensworth*, 7 Wendell, 326; *United States Bank* v. *Binney*, 5 Mason, 182.

[2] If a person colludes with one partner in a firm to in ure the other part ners, those others can maintain a joint action against the person so colluding *Longman* v. *Poole*, 1 Moody & Malk. 223.

where an innocent indorsee is the holder of the securities improperly created, and nothing but the necessity of protecting innocent persons upon negotiable paper would justify this extension of their liability.

A series of cases decided in New York have established the rule in that state incontrovertibly. The case of *Livingston* v. *Hastie*, 2 Caines's R. 246, seems to have been well considered, and the decision has been recognised and enforced in the several cases of *Lansing* v. *Gaine and Ten Eyck*, 2 Johns. R. 300; *Livingston* v. *Roosevelt* and *Dubois* v. *Roosevelt et al.*, 4 Johns. R. 251; *Doe et al.* v. *Halsey*, 16 Johns. R. 34; and *Foot* v. *Sabin*, 19 Johns. R. 154.

The rule is summed up in these words and repeated in every case:—"Where a note is given in the name of a firm by one of the partners, for the private debt of such partner, and known to be so by the person taking the note, the other partners are not bound by such note, unless they have been previously consulted and consent to the transaction."

Now in the case before us the note in suit, which was made by Coffin in the name of Edwards & Coffin, who were partners, was given for the debt of a former house of Bowes & Coffin, with which Edwards had no connexion; and it is equally clear that the agent of the plaintiff knew this to be the case, for this note was given in lieu of a note by Bowes & Coffin, which lay over in the bank dishonored. There is not only no evidence that Edwards consented to the transaction, but there is positive testimony from Edwards that he never was consulted, never gave any consent, and was wholly ignorant on the subject until several days after the note was given, when Coffin had absconded. This makes the case much stronger than any of the New York cases, and differs it essentially from the case of *Ridley et al.* v. *Taylor* in 13 East.

The counsel for the plaintiff, in his ingenious argument, admits the rule, but would qualify it by the introduction of an exception, to wit, that if the creditor had reason to believe or suppose that the person giving the note had authority from his partner, he should have a right to recover. No authority has been cited in support of this exception; and if there had been, we perceive no evidence in the report that would bring the

case within the exception. If there had been good reason for the creditor to believe an authority in Coffin, from any conduct or declarations of Edwards, the other member of the house, the assent of Edwards might be implied.[1] It does not appear that Coffin was inquired of respecting his authority, or that he made any declaration on the subject.

We think it very clear that the plaintiff could not maintain an action upon the note against Edwards, one of the copartners.

Nor can we think the case is any stronger against the defendants as indorsers. The making and indorsing of the note were one transaction, and were in pursuance of a previous agreement to give such a note so indorsed. There is no room to suppose that the defendants had any consideration for indorsing or any indemnity therefor. Having been accustomed to indorse for Edwards & Coffin, they would naturally suppose that a note brought to them with their names as promisors was for the accommodation of that house. Certainly they would have no reason to imagine that the note was made by Coffin without the knowledge of Edwards, to secure the private debt of Coffin. They therefore, in the absence of all evidence, must be presumed to have thought it such a note as they were in the habit of indorsing. If then the note was inherently bad, and made so by the act of the plaintiff, he taking it for the private debt of Coffin, to give him a right to recover of the defendants would insure to him the fruits of an unlawful act; and of consequence would take money from them without their having any chance of indemnifying themselves against the parties whose note they supposed they had indorsed, or else, by enabling them to recover against Edwards, would make him liable circuitously when he could not be liable directly. On this point also the case in 2 Caines's R. is very clear, and the other authorities cited are of the same tendency.

We cannot think with the counsel for the plaintiff, that the burden of proof is on the defendants, to show that they did not know the circumstances under which the note was made.

---

[1] See *Woodward* v. *Winship*, 12 Pick. 430 ; *Williams* v. *Walbridge*, 3 Wendell, 415 ; *Boardman* v. *Gore*, 15 Mass. R. 340 ; *Stone* v. *Marsh* 6 Barn. & Cress. 551 ; *S. C* Ryan & Moody, 364.

They had a right to presume it a valid note against the fi m, and were not bound to inquire whether Coffin had not abused the confidence of his partner. They are innocent persons ; the plaintiff is not, for he knew the consideration of the note. We think the case is very clearly made out for the defendants in principle and by authority.[1]

*Judgment according to the verdict.*

Chazournes
*v.*
Edwards.

---

[1] See *Manufac and Mech. Bank* v. *Winship*, 5 Pick. 11 ; *Foster* v. *Andrews*, 2 Penrose & Watts, 160 ; *Vallett* v. *Parker*, 6 Wendell, 615 ; *U. S. Bank* v. *Binney*, 5 Mason, 183.

In an action against a firm upon a negotiable note made by one partner in the name of the firm and endorsed by the payee to the plaintiff, the other partners have a right to show, that the note was fraudulent in its inception and was fraudulently put into circulation ; which being established will throw the burden of proof upon the plaintiff to show that he came by the note fairly and without knowledge of the fraud. *Munroe* v. *Cooper*, 5 Pick. 412; *Chitty on Bills*, (Philad. ed.) 42, note *a; Solomons* v. *Bank of England*, 13 East, 134, note· *Woodhull* v. *Holmes*, 10 Johns. R. 231.